**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION**

| | | |
|---|---|---|
| ERTC EXPRESS, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CASE NO.: 1:24-CV-168 (LAG) |
| | : | |
| HTS CONSTRUCTION, INC., | : | |
| | : | |
| Defendant. | : | |
| | : | |

## <u>ORDER</u>

Before the Court is Plaintiff's Motion to Dismiss Defendant's Counterclaims and Brief in Support. (Doc. 30). For the reasons below, Plaintiff's Motion is **GRANTED**.

## BACKGROUND

This suit arises from a contract dispute involving funds provided under the CARES Act.[1] Plaintiff ERTC Express, LLC processes employee retention credits (ERCs) by determining eligibility, calculating the amount of credits businesses may be entitled to receive, and, if authorized, filing the paperwork with the IRS. (Doc. 25 ¶¶ 10–11). Plaintiff contacted Defendant's Office Manager, Kala Holton, "regarding [Plaintiff's] services and certain benefits" that Plaintiff could obtain for Defendant under the CARES Act.[2] (Doc. 28 ¶ 6, at 10). Defendant HTS Construction, Inc. allegedly entered into an agreement with Plaintiff on May 8, 2023, to determine Defendant's eligibility to receive ERCs and the amount of those credits available to Defendant. (Doc. 28 ¶¶ 6–8, at 10–11).

---

[1]    On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court accepts all facts alleged in Defendant's Counterclaim (Doc. 28) as true. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1139 (11th Cir. 2005) (applying 12(b)(6) standard to counterclaims).

[2]    In 2020, Congress passed the CARES Act which, in relevant part, provided ERCs for employers subject to closure due to the Coronavirus. 26 U.S.C. § 3134. These ERCs were eligible to employers whose business was either fully or partially suspended due to the ongoing pandemic. 26 U.S.C. § 3134(c)(2).

In the Complaint, Plaintiff alleges that Defendant breached the contract by failing to pay Plaintiff based on the work it completed under the contract in determining Defendant's eligibility and filing of the paperwork. (Doc. 25 ¶¶ 22–24). Defendant answered, alleging seven counterclaims against Plaintiff, including: (1) unjust enrichment; (2) breach of contract; (3) fraud in the inducement; (4) constructive fraud; (5) negligent misrepresentation; (6) breach of Georgia's fair business practices act; and (7) bad faith. (*See* Doc. 28 at 15–21). Plaintiff filed the present Motion to Dismiss Defendant's Counterclaims on June 3, 2025. (Doc. 30). Therein, Plaintiff seeks the dismissal of all Defendant's counterclaims. (Doc. 30-1 at 3–15). Defendant filed its response on July 1, 2025 (Doc. 35) and Plaintiff replied on July 3, 2025 (Doc. 36). Accordingly, the Motion is ripe for review. *See* M.D. Ga. L.R. 7.3.1(A).

## LEGAL STANDARD

"A motion to dismiss a counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6) is evaluated in the same manner as a motion to dismiss a complaint." *United States v. Zak*, 550 F. Supp. 3d 1349, 1351 (N.D. Ga. 2021) (quoting *Great Am. Assurance Co. v. Sanchuk, LLC*, No. 8:10-CV-2568-T-33AEP, 2012 WL 195526, at *2 (M.D. Fla. Jan. 23, 2012)). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a [counterclaim] must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570); *Manuel*, 430 F.3d at 1139 (applying 12(b)(6) standard to counterclaims). A claim is plausible on its face if it alleges enough facts to "allow[] the court to draw the reasonable inference that the [plaintiff] is liable for the misconduct alleged." *Id.* (citation omitted). The counterclaim must plead "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of the plaintiff's liability. *Twombly*, 550 U.S. at 556. The Court "take[s] the factual allegations in the [counterclaim] as true and construe[s] them in the light most favorable to the [defendant]" but is "not required to accept the legal conclusions in the complaint as true." *Anderson v. Wilco Life Ins. Co.*, 17 F.4th 1339, 1344–45 (11th Cir. 2021) (citations omitted). A defendant asserting a counterclaim "armed with nothing more than conclusions" cannot "unlock the doors of

2

discovery[.]" *Iqbal*, 556 U.S. at 678–79. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to survive a motion to dismiss. *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

## DISCUSSION

As a threshold matter, Plaintiff argues that Defendant's Counterclaim should be dismissed as a shotgun pleading. (Doc. 30-1 at 3). The Eleventh Circuit has identified a shotgun pleading as one that:

> (1) contains multiple counts where each count adopts the allegations of all preceding counts; (2) is replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action; (3) fails to separate into a different count each cause of action; or (4) asserts multiple claims against multiple defendants without specifying which defendant is responsible for which act.

*Embree v. Wyndham Worldwide Corp.*, 779 F. App'x 658, 662 (11th Cir. 2019) (citing *Weiland v. Palm Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321–22 (11th Cir. 2015)). Regardless of the type of shotgun pleading, the "unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the [plaintiffs]adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland*, 792 F.3d at 1323.

Although Defendant's Answer does contain multiple counts that adopt the allegations of all preceding counts, Defendant asserts additional claims for each count that gives Plaintiff "adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland*, 792 F.3d at 1323; (*see generally* Doc. 28). Accordingly, Defendant's counterclaims are not "so vague or ambiguous" that Plaintiff cannot frame an answer. Fed. R. Civ. P. 12(e). While the Answer improperly incorporates the allegations of preceding counts, it is not so vague that it is "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996). Thus, the Answer/Counterclaim does not constitute an impermissible shotgun pleading requiring dismissal or repleader.

## I.    Unjust Enrichment/Quantum Meruit

Defendant asserts a counterclaim for unjust enrichment arguing that no valid contract existed between the parties because Defendant did not authorize anyone to enter into any agreement with Plaintiff on its behalf. (Doc. 28 ¶¶ 29–34, at 15–16). Plaintiff contends that this counterclaim must be dismissed because Defendant has not plausibly alleged that it provided any service to Plaintiff. (Doc. 30-1 at 3–5). "The theory of unjust enrichment is basically an equitable doctrine that the benefitted party equitably ought to either return or compensate for the conferred benefits when there was not legal contract to pay." *Morris v. Britt*, 620 S.E.2d 422, 424 (Ga. Ct. App. 2005) (quoting *Hollifield v. Monte Vista Biblical Gardens*, 553 S.E.2d 662 (Ga. Ct. App. 2001)). "A claim of unjust enrichment will lie if there is no legal contract and 'the party sought to be charged has been conferred a benefit by the party contending an unjust enrichment which the benefited party equitably ought to return or compensate for.'" *Jones v. White*, 717 S.E.2d 322, 328 (Ga. Ct. App. 2011) (quoting *Smith v. McClung*, 452 S.E.2d 229 (Ga. Ct. App. 1994)).

Defendant does not allege that it conferred any benefit on Plaintiff. Instead, as Defendant concedes in its Counterclaim, it was Defendant who received the benefit of Plaintiff's services in the form of four separate checks from the government in the amounts of $334,936.81, $167,268.96, $24,930.24, and $121,095.22. (Doc. 28 ¶ 23, at 13–14; Doc. 35 at 3). Moreover, Defendant's conclusory allegation that "[a]ny services rendered and benefits received by [Plaintiff] were knowingly . . . procured under false pretenses" does not point the Court's attention to any actual benefit Plaintiff received. (Doc. 28 ¶ 33, at 15). Therefore, as Defendant has failed to allege a necessary element, it has failed to state a claim for unjust enrichment.

## II.    Breach of Contract

Next, Defendant alleges breach of contract based on Plaintiff's preparation of Defendant's ERC paperwork "which conveyed an inaccurate reflection of credits [Defendant] was entitled to under the ERC[.]" (Doc. 28 ¶ 38, at 16). Plaintiff argues that Defendant's claim should be dismissed because it "asserts conclusory allegations" and "is

devoid of any facts that plausibly allege which provision(s) in the contract may have been breached nor averred how such breach occurred." (Doc. 30-1 at 5).

The elements for a breach of contract claim in Georgia are "the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken. Proof of damages is an essential element to a claim for breach of contract, and a failure to prove damages is fatal to a plaintiff's claim." *Knaack v. Henley Park Homeowners Ass'n, Inc.*, 877 S.E.2d 821, 829 (Ga. Ct. App. 2022) (citation omitted). The Eleventh Circuit has explained that a party fails to plead plausibly a Georgia breach of contract claim under the Federal Rules of Civil Procedure where the party does not "allege[] any general or specific provision of any contract that [the other party] might have breached." *Est. of Bass v. Regions Bank, Inc.*, 947 F.3d 1352, 1358 (11th Cir. 2020); *Brooks v. Branch Banking & Tr. Co.*, 107 F. Supp. 3d 1290, 1296 (N.D. Ga. 2015) ("[A] plaintiff asserting a breach of contract claim must allege a *particular contractual provision* that the defendants violated to survive a motion to dismiss." (emphasis added)).

Defendant makes the following allegations in its counterclaim: (1) Defendant entered into an allegedly invalid agreement with Plaintiff; (2) Plaintiff filed the ERC documentation after Defendant twice emailed Plaintiff requesting that it not file the documentation; and (3) the information included in the ERC filing was inaccurate. (Doc. 28 ¶¶ 17–20, 39, at 12–13, 16). Defendant does not, however, point the Court to any general or specific provision of the contract that Plaintiff is alleged to have breached nor does Defendant identify with the necessary specificity what inaccurate information Plaintiff included in the ERC paperwork. Thus, Defendant fails to state a claim for breach of contract.

## III.     Fraud in the Inducement

Defendant also asserts that Plaintiff "made misrepresentations to induce [Defendant] into entering into the Agreement" "with knowledge that said representations were false or with reckless disregard of the truth" and "intended to and did deceive [Defendant] with th[o]se misrepresentations." (Doc. 28 ¶¶ 42–44, at 17). Plaintiff argues that Defendant fails to state "actual specific allegations" that "identify any particular

misrepresentations or omissions, much less who made them, when they were made, how they were misleading, or what [Plaintiff] obtained as a result." (Doc. 30-1 at 8).

The elements of a claim for fraud are that: (1) "[plaintiff] knowingly made [a] false statement"; (2) "[plaintiff] intended for the [defendant] to act or refrain from acting in reliance on [that] statement"; (3) "the [defendant] justifiably relied on [plaintiff's] false statements; and (4) the defendant's reliance resulted in damages. *Wylie v. Denton*, 746 S.E.2d 689, 695 (Ga. Ct. App. 2013) (citation omitted). Federal Rule of Civil Procedure 9 requires that claims of fraud "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The Eleventh Circuit has held that Rule 9 is satisfied if the claim

> sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the [defendant], and (4) what the [plaintiff] obtain as a consequence of the fraud.

*Dixon v. Allergan USA, Inc.*, 645 F. App'x 930, 932 (11th Cir. 2016) (per curiam) (quoting *Tello v. Dean Witter Reynolds, Inc.*, 494 F.3d 956, 972 (11th Cir. 2007)).

Defendant has not pled any facts which establish a claim for fraud. In its counterclaim, Defendant only alleges that Plaintiff contacted Kala Holton "regarding ERTC Express's services and certain [ERC] benefits ERTC Express could allegedly obtain for HTS under the CARES Act[,]" "HTS acted upon [those] misrepresentations in reasonable reliance upon their veracity[,]" and Kala Holton "was induced into the Agreement[.]" (Doc. 28 ¶¶ 6, 43–45, at 10, 17). Defendant has not alleged any facts regarding whether Plaintiff made a specific false statement or any facts which support an inference that Plaintiff intended for Defendant to rely on any such statement. Furthermore, the counterclaim contains no allegations regarding the time and place of such fraud. Accordingly, Defendant has failed to state a claim for fraud in the inducement.

6

## IV.   Constructive Fraud

Fourth, Defendant asserts that Plaintiff is liable for constructive fraud because Plaintiff contacted Defendant's office manager and told her about Plaintiff's knowledge and services regarding ERC credits. (Doc. 28 ¶¶ 47–52, at 18–19). Defendant asserts that it relied on the Plaintiff's "knowledge and proclamations" and entered into an agreement. (Doc. 28 ¶ 49, at 18). Plaintiff argues that this counterclaim, too, must be dismissed because Defendant fails to allege the existence of a confidential relationship as required by Georgia law. (Doc. 30-1 at 8–9). The Court agrees.

To state a claim for constructive fraud under Georgia Law, Defendant must allege the existence of a confidential relationship between itself and Plaintiff. *Abdullahi v. Bank of America*, 549 F. App'x 864, 868 (11th Cir. 2013) (per curiam) (citing *Delta Diversified, Inc. v. Citizens & S. Nat'l Bank*, 320 S.E.2d 767, 776 (Ga. Ct. App. 1984)). "A confidential relationship exists 'where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another[.]'" *Id.* (quoting *First Union Nat'l Bank v. Gurley*, 431 S.E.2d 379, 381 (Ga. Ct. App. 1993)). Furthermore, "[t]he mere fact that one reposes trust and confidence in another does not create a confidential relationship." *Id.* (citation omitted).

Here, Defendant contends that Plaintiff "exercised control over the will, conduct, and interest of Defendant by filing for tax credits on Defendant's behalf despite Defendant's" attempts to terminate the Agreement. (Doc. 35 at 10; *see* Doc. 28 at 18–19). Not only is this a conclusory statement, but Defendant does not allege how Plaintiff was "so situated" as to exercise such control. Defendant does not point the Court to any specific confidential relationship other than a normal business dealing where "opposite parties have trust and confidence in each other's integrity." *Lewis v. Alderman*, 162 S.E.2d 440, 441 (Ga. Ct. App. 1968) (citation omitted). Georgia courts have held that this alone does not support a confidential relationship. *First Union Nat'l Bank*, 431 S.E.2d at 381; *Kienel v. Lanier*, 378 S.E.2d 359, 361 (Ga. Ct. App. 1989) (quoting *Lewis*, 162 S.E.2d at 441. Accordingly, Defendant has failed to state a claim for constructive fraud.

## V.      Negligent Misrepresentation

Next, Defendant asserts that Plaintiff is liable for negligent misrepresentation based on the representations Plaintiff made "regarding the services to be rendered . . . and the receipts of benefits therefrom" and "regarding certain benefits and amounts [Defendant] would be entitled to." (Doc. 28 ¶¶ 53–58, at 19–20). Plaintiff moves to dismiss this claim because Defendant fails to point to any "specific misrepresentations" made by Plaintiff. (Doc. 30-1 at 10).

Under Georgia law, a claim of negligent misrepresentation has three essential elements: (1) the negligent supply of false information to foreseeable persons, known or unknown; (2) the foreseeable persons' reliance on that information was reasonable; and (3) economic injury proximately resulted from that reliance. *Atwater v. Nat'l Football League Players Ass'n*, 626 F.3d 1170, 1182 (11th Cir. 2010) (citing *Futch v. Lowndes Cnty.*, 676 S.E.2d 892, 896 (Ga. Ct. App. 2009)). Here, Defendant offers nothing more than bare, conclusory allegations that Plaintiff was negligent. Defendant fails to state any facts regarding what representation Plaintiff made that deviated from the standard of care. Furthermore, Defendant does not allege what statements were inaccurate or constituted a misrepresentation. The most Defendant's counterclaim alleges is that Plaintiff "negligently made representations" regarding services or benefits (Doc. 28 ¶ 54, at 19), but, without more, this is inadequate to transform Defendant's claim into something more than speculation.

## VI.     Georgia Fair Business Practices Act

Defendant also asserts that Plaintiff's conduct runs afoul of the Georgia Fair Business Practices Act (FBPA). (Doc. 28 ¶¶ 59–62, at 20). Plaintiff argues that the claim should be dismissed because it falls outside the scope of the FBPA, because the FBPA is designed specifically to protect the consuming public generally. (Doc. 30-1 at 12–14).

The Georgia FBPA is designed "to protect consumers against that limited class in conduct of consumer transactions and consumer acts or practices in trade or commerce which involve 'unfair and deceptive practices' within the consumer marketplace." *Chancellor v. Gateway Lincoln-Mercury, Inc.*, 502 S.E.2d 799, 804 (Ga. Ct. App. 1998)

8

(quoting O.C.G.A. § 10-1-391(a)). Georgia code defines consumer transactions as "the sale, purchase, lease, or rental of goods, services, or property, real or personal, primarily for personal, family, or household purposes." O.C.G.A. § 10-1-392(a)(10). Consumer acts or practices are defined as "acts or practices intend to encourage consumer transactions." *Id.* § 10-1-392(a)(7). "Any essentially private transaction falls outside the protection of the FBPA, because the FBPA seeks to prohibit conduct in the marketplace that is unfair or deceptive, that has actual or potential harm to the consumer public[.]" *Chancellor*, 502 S.E.2d at 805 (citations omitted). "The FBPA does not 'provide an additional remedy for private wrongs which do not and could not affect the consuming public generally.'" *Id.* (quoting *Zeeman v. Black*, 273 S.E.2d 910, 913 (Ga. Ct. App. 1980)).

The Agreement between the Parties was not for the sale of services for personal, family, or household purposes, nor are there allegations that either Party intended to encourage consumer transactions. Rather, the conduct here was a private transaction that did not occur in the marketplace. Therefore, Defendant fails to state a claim under the FBPA.

## VII.   Attorney Fees

Lastly, Defendant seeks attorney fees based on what it asserts as Plaintiff's bad faith actions in the procurement of the disputed agreement. (Doc. 28 ¶ 65, at 21). This claim also fails because any fees pursuant to O.C.G.A. § 13-6-11 cannot stand alone without an underlying claim. *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1316 (11th Cir. 2004). As all of Defendant's underlying claims fail, Defendant is not entitled to attorney's fees.

## CONCLUSION

Accordingly, Plaintiff's Motion to Dismiss Defendant's Counterclaims (Doc. 30) is **GRANTED**.

**SO ORDERED**, this 3rd day of March, 2026.

/s/ Leslie A. Gardner
**LESLIE A. GARDNER, CHIEF JUDGE**

**UNITED STATES DISTRICT COURT**